UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FRANCISCO VALDEZ, | Case No. 12-CV-0801 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| MINNESOTA QUARRIES, INC. d/b/a Mankato Kasota Stone, Inc., | |
| Defendant. | |

Sofia B. Andersson-Stern and Steven Andrew Smith, NICHOLS KASTER, PLLP, for plaintiff.

Sofia A. Estrellado and Matthew R. McBride, WINTHROP & WEINSTINE, P.A., for defendant.

Plaintiff Francisco Valdez brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 et seq., against his former employer, defendant Minnesota Quarries, Inc., d/b/a Mankato Kasota Stone, Inc. ("Kasota Stone"). Kasota Stone fired Valdez — a 14-year employee — after he returned from his sister's funeral in Mexico in April 2009, when panic over the swine-flu pandemic was at its height. Mexico was the epicenter of that pandemic, and, if Valdez's evidence is to be believed, Kasota Stone fired him because it feared that he may have been exposed to the swine-flu virus while he was in Mexico.

Valdez's lawsuit poses the interesting question of whether someone who is regarded as having an impairment that *in fact* is no more serious than seasonal flu — but that, for a period of time, is widely (although mistakenly) *perceived* as being far more dangerous — is "disabled" for

purposes of the ADA and the MHRA. Because the Court concludes that the answer is "no," the Court grants Kasota Stone's motion for summary judgment.

## I.  BACKGROUND

Valdez, who was born in Mexico, began working for Kasota Stone in May 1995 and held various positions at the company for the next 14 years. He appears to have been a good employee with satisfactory performance reviews. On Saturday, April 25, 2009, Valdez learned that his sister in Mexico was gravely ill and not likely to live much longer. Valdez immediately left for Mexico in the hope of seeing her before she died. Valdez asked one of his adult sons to let Kasota Stone know that he would be missing work due to a family emergency. On Sunday, April 26, 2009, Valdez's son called Kasota Stone and left a message informing Valdez's managers of the situation and asking that they call him with any questions or concerns. He did not receive any calls.

Unfortunately, by the time that Valdez arrived in Mexico, his sister had already died. Valdez stayed for her funeral and returned home on Friday, May 1, 2009. After arriving home, Valdez called his supervisor about returning to work. The supervisor transferred him to the human-resources director, and the human-resources director told him that he was being fired because Kasota Stone feared that he had contracted swine flu during his trip to Mexico.[1] She also told him that he was terminated for violating the company's no call/no show policy. According to Kasota Stone, the policy requires an employee to personally contact the company if

---

[1] "Swine flu" is caused by a variant of the H1N1 virus and is so called because it contains a combination of genes closely related to previously identified swine-origin flu viruses. Andersson-Stern Aff. Ex. 5. In late April 2009, during Valdez's trip, the Centers for Disease Control and Prevention ("CDC") recommended that Americans avoid non-essential travel to Mexico, where there was a significant outbreak of swine flu. *Id.* Ex. 10.

the employee is going to be absent from work; it will not do for an employee to ask a family member to call on his behalf. Kasota Stone followed up with an official termination letter informing Valdez that he had been fired for violating the no call/no show policy and that, due to health and safety concerns arising out of his trip to Mexico, he should not come on site without contacting the company.

## II. ANALYSIS

### A. *Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. *Valdez's Claims*

As noted, Valdez brings claims under the ADA and Title VII (as well as the MHRA[2]). Under Title VII, Valdez alleges that Kasota Stone discriminated against him on the basis of his national origin. Valdez barely addressed this claim in his briefing, however, and at oral argument he all but conceded that it is without merit. The concession was wise; the evidence in the record would support a finding that Valdez was terminated because he violated the no call/no show

---

[2]Both sides agree that Valdez's MHRA claims should be analyzed under the same standards that govern his federal claims.

policy, and it would support a finding that he was terminated because he was believed to have contracted swine flu, but it would not support a finding that he was terminated because he was Mexican. Valdez's Title VII claim is therefore dismissed.

Valdez's ADA claim, however, presents a closer question. At oral argument, Kasota Stone conceded (also wisely) that a jury could find that Valdez was terminated because Kasota Stone feared that he had contracted swine flu while in Mexico for his sister's funeral. The question in this case is whether that termination violated the ADA.

To prevail on a claim of disability discrimination, a plaintiff must prove that he is "disabled" within the meaning of the ADA. *Kallail v. Alliant Energy Corp. Servs.*, 691 F.3d 925, 930 (8th Cir. 2012). Disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1).

Valdez relies on the "regarded as" prong of the definition, arguing that he was fired because Kasota Stone regarded him as having swine flu. Under the "regarded as" prong, a plaintiff need only prove that he was regarded as having an impairment; he need not prove that the impairment (if he had it) would have limited a major life activity. 42 U.S.C. § 12102(3)(A). The ADA establishes a narrow affirmative defense, however: An employee is not "regarded as" disabled if the impairment that he is regarded as having is both "transitory and minor." 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.15(f).

An impairment is "transitory" if it has an actual or expected duration of six months or less. 42 U.S.C. § 12102(3)(B). Neither the statute nor the regulations define "minor." The

legislative history of the "transitory and minor" exception, however, indicates that its purpose is to exclude "common ailments like the cold or flu" from being considered disabilities under the "regarded as" prong. 29 C.F.R. pt. 1630, app. The regulations make clear that the determination of whether an impairment is transitory and minor is an objective inquiry. The subjective beliefs of the employer are irrelevant; what matters is whether the impairment *is*, in fact, transitory and minor. Thus, an employer cannot defeat an ADA claim by arguing that it subjectively believed the plaintiff's impairment was transitory and minor. 29 C.F.R. § 1630.15(f).

Valdez does not dispute that swine flu is "transitory" for purposes of the ADA. Moreover, at oral argument Valdez conceded — and the Court agrees — that swine flu *as it is now understood* is also "minor" for purposes of the ADA, in the sense that it has not turned out to be more serious than seasonal flu, and seasonal flu is undoubtedly "transitory and minor" for purposes of the ADA. *See* Andersson-Stern Aff. Ex. 9 (estimating a total of 274,000 hospitalizations and 12,470 deaths in the United States due to swine flu from April 2009 to April 2010); Centers for Disease Control and Prevention, *Seasonal Influenza (Flu)*, http://www.cdc.gov/flu/about/qa/disease.htm (last visited Dec. 6, 2012) (estimating that each year in the United States more than 200,000 people are hospitalized for seasonal-flu-related complications and that seasonal-flu-related deaths have ranged from a low of 3,000 to a high of 49,000 per year in the three decades preceding 2006).

The crux of Valdez's argument is that, in assessing whether swine flu is "transitory and minor" for purposes of this case, the Court must look not to how serious swine flu *is*, but to how serious swine flu was *perceived* to be at the time that he was fired. Little was known about swine flu in April 2009, and medical authorities feared the worst. Swine flu was declared a public-

health emergency, and there was widespread panic about the possibility of a deadly pandemic. Valdez was terminated at the height of this public hysteria. Giving him a remedy under the ADA, he argues, would be consistent with both the overall purpose of the ADA to combat unfounded fears about medical conditions and with the 2008 amendments that were intended to broaden the scope of coverage under the ADA.

Valdez makes a respectable argument for why his firing *should* be unlawful under the ADA (although a respectable argument could be made to the contrary[3]). But this Court must apply the law as it exists, and not as a party may wish it to be. It is clear under the statute and the implementing regulations that the Court must decide whether an impairment is "transitory and minor" on an objective basis. The question turns not on perception, but on reality. And from an objective standpoint, swine flu must be considered transitory and minor. It has a mortality and hospitalization profile similar to that of seasonal flu, and the legislative history cites seasonal flu as the paradigmatic example of a transitory and minor ailment. Because swine flu is objectively transitory and minor, it is not a disability under the "regarded as" prong of the ADA. *See Lewis v. Fla. Default Law Grp., P.L.*, No. 10-CV-1182, 2011 WL 4527456, at *5-6 (M.D. Fla. Sept. 16, 2011) (concluding that swine flu is transitory and minor); U.S. Equal Employment Opportunity Commission, *Pandemic Preparedness in the Workplace and the Americans with Disabilities Act* (Oct. 9, 2009), http://www.eeoc.gov/facts/pandemic_flu.html (technical-assistance document for employers indicating that swine flu is not a disability within the meaning of the ADA). Valdez

---

[3]Kasota Stone would undoubtedly argue that it did not act on the basis of the kind of unfounded biases or prejudices that are the target of the ADA, but instead on the basis of fears that, at the time, were shared by *everyone* — including leading medical authorities.

therefore cannot be considered disabled within the meaning of the ADA.  Kasota Stone's motion for summary judgment is granted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [ECF No. 9] is GRANTED.

2. Plaintiff's complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  December  10 , 2012          s/Patrick J. Schiltz
                                     Patrick J. Schiltz
                                     United States District Judge